JACOB HARTZ SEED COMPANY, INC.,
An Arkansas Corporation *v.* E. R. COLEMAN

80-180                                    612 S.W. 2d 91
Supreme Court of Arkansas
Opinion delivered January 26, 1981
[Rehearing denied March 23, 1981.]

*Macom, Moorhead, Green & Henry*, by: *William M. Moorhead*, for appellant.

*Thompson & Arnold*, by: *Blair Arnold*, for appellee.

FRANK HOLT, Justice. Appellant, pursuant to a contract, bought certified soybeans from the appellee, producer. By this action appellant seeks reimbursement from appellee for the balance of money it paid appellee for the beans, plus costs, asserting the seed did not meet the required germination test. Appellee counterclaimed, asserting he suffered damages resulting from his resale of the seeds below the contract price. The court, sitting as a jury, found the soybeans were at all times in conformity with the terms of the contract and dismissed appellant's claim for reimbursement of $9,-915.16 and awarded appellee $6,551.60 on its counterclaim. Appellant contends on appeal that the lower court erred in not finding a lack of acceptance under Chapter 2 of the Uniform Commercial Code, Ark. Stat. Ann. §§ 85-2-101 et seq. (Add. 1961), or in the alternative, in not finding that the doctrine of impracticability, Ark. Stat. Ann. § 85-2-615 (Add. 1961), applies. Appellee cross-appeals, contending the court erred in not awarding him an additional amount of $1,379.70 as damages for expenses he incurred in picking up and reselling the beans.

Appellant Hartz purchased the certified soybeans through a broker from the appellee in February, 1978, for delivery in February or March. Thereupon, Hartz resold the seed, before delivery, to a wholesale seed dealer in Georgia.

The seed was picked up by this wholesale dealer on April 8 and May 5 at appellee's warehouse in Cord, Arkansas. On May 15, after testing the seed, the Georgia Department of Agriculture reported the germination level (67%) to be below that certified (80%) by appellee according to Arkansas tests. It placed a stop sale order on the seed and notified appellee. Appellee requested another test by Georgia. On May 31, the test report indicated a germination level of 65%, or again too great a variance from that certified by appellee. Appellant notified appellee on June 1 it was cancelling the contract. On June 14 and 16 appellee picked up the beans in Georgia and on June 20 repaid appellant $20,250 of the purchase price. It appears the planting season for this type soybean ends between June 15 and July 10. Appellee had the seeds retested by the Arkansas State Plant Board, which reported on July 5, 1978, a germination of 81%. On July 21 the United States Department of Agriculture Seed Laboratory in Montgomery, Alabama, reported the Arkansas Samples tested 88% germination. On August 2 that agency reported the germination level of the Georgia sample at 76% or 78% or sufficient for the 80% label as certified by appellee. In a letter dated August 21, appellee requested appellant to take delivery of the soybeans by August 31, which was refused. The value of the beans, as seed beans, had steadily declined from the end of the planting season until they were of no value as such as of the time of the letter. Appellee sold the beans as oil beans.

Appellant argues that under the U.C.C. the goods were seasonably rejected. Appellee contends this was a fact question, and the trial judge's finding is supported by the evidence and should be upheld. We are of the view that the trial court erred for the reason that the facts clearly preponderance there was no acceptance under the U.C.C. Under the Code, as adopted in Arkansas, the buyer may reject goods which fail in any respect to conform to the contract. Ark. Stat. Ann. § 85-2-601 (Add. 1961). Rejection must be within a reasonable time after delivery or tender, and the buyer must seasonably notify the seller. § 85-2-602. Acceptance occurs when the buyer has had a reasonable opportunity to inspect the goods and signifies to the seller that they are conforming or that he will take them in spite of their nonconformity. § 85-2-606. If the buyer fails to make an effective rejection, under § 85-2-

602, after having had a reasonable opportunity to inspect the goods, this also constitutes acceptance under § 85-2-606. Under subsection (11) (c), if the buyer does any act inconsistent with the seller's ownership, this may constitute acceptance also.

It is clear that, under the Code, delivery does not in and of itself constitute acceptance. In White and Summers, Uniform Commercial Code, p. 296 (2d 1980), acceptance as provided in § 85-2-606, *supra*, is discussed:

> Acceptance is a term of art which must be sharply distinguished from a variety of other acts which the buyer might commit. Note first that whether the buyer has 'accepted' the goods is unrelated to the question whether title has passed from seller to buyer. Secondly, acceptance is only tangentially related to buyer's possession of the goods, and in the usual case the buyer will have had possession of the goods for some time before he has 'accepted' them.

Furthermore, it is there pointed out that acts done without knowledge of defects, which the buyer could not have discovered, do not fall under § 85-2-606 (1) (c). Thus, appellee's argument that the resale by appellant, the buyer, constituted an inconsistent act which establishes acceptance is not persuasive.

Here, the seller's name was on the tag attached to the beans, and he was the one notified by Georgia of the test results. The buyer was unable to sell the beans in Georgia pursuant to the stop sale order which read, "No part of this lot of seed is to be sold or disposed of except as provided for in written release from this department." As appellant points out, the Federal Seed Act, 7 U.S.C. §§ 1551, et seq., prohibits transporting seeds in interstate commerce that have a false label. § 1571 (d). At the point it found the beans to have tested below the germination labelled by appellee, the appellant buyer notified the appellee seller it was rejecting, which it had the right to do under the U.C.C. for goods that are nonconforming. Appellee, expressing disbelief in the Georgia test, reclaimed the goods and then refunded most of

the purchase price to appellant. Before doing so, however, he requested a retest in Georgia, which caused a delay, while the time for planting was expiring.

In the circumstances, appellant buyer rejected the nonconforming goods within a reasonable time after discovery of the nonconformity, following the second test performed in Georgia at appellee's request, and seasonably notified the seller. Therefore, the trial court's finding that appellant is liable under the contract is against the clear preponderance of the evidence. It follows that appellant is entitled to reimbursement and appellee's counterclaim should be dismissed. In doing so, therefore, it becomes unnecessary to discuss appellant's other contentions as well as appellee's cross-appeal.

Reversed and remanded for proceedings consistent with this opinion.

Reversed.

ADKISSON, C.J., and PURTLE and DUDLEY, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. I respectfully dissent from the majority holding that the appellant rejected nonconforming goods.

The appellee, E. R. Coleman, warranted these beans to have a germination level of at least 80 percent. On January 17, 1978, tests by the Arkansas State Plant Board registered 81 percent germination. On February 14, 1978, the Arkansas State Plant Board found 82 percent germination.

Appellant, Jacob Hartz Seed Company, made the same warranty when it resold these beans to a Georgia planter.

On May 15, 1978, the Georgia authorities found a germination level of only 67 percent. On May 31, upon retesting in Georgia, only 65 percent germination was found.

The appellee then went to Georgia, picked up the beans and had them retested by the Arkansas State Plant Board.

On July 5, the Arkansas finding was 81 percent germination. On July 11, federal tests found 88 percent germination using the Arkansas sample. On August 2, federal tests of the Georgia samples showed a germination count of 77 percent.

The tests administered in Georgia reached an erroneous result, as the dead beans did not come back to life upon re-entering Arkansas. One witness explained that probably this happened as a result of a seed borne pathogen, which died after a period in storage. The Georgia authorities could have determined if this was the situation by using a second type of test, but they did not do so.

The trial court found the Georgia tests were in error. In reviewing a finding of fact of the trial court this court should consider the evidence in the light most favorable to the appellee and affirm unless the trial court's decision is clearly erroneous. Ark. R. Civ. P. 52; *Taylor* v. *Richardson Const. Co.*, 266 Ark. 447, 585 S.W. 2d 934 (1979). There is ample evidence to sustain the trial court. Hence, the evidence should be viewed as reflecting that the beans always had at least 80 percent germination.

The appellee warranted 80 percent germination. There were no nonconforming beans delivered which would authorize rejection under the Commercial Code, Ark. Stat. Ann. § 85-2-601 (Add. 1961). The seller did not warrant that the plant board of Georgia would not make an error.

Neither of these parties is at fault and both acted in good faith. If there was frustration of a contract, it was frustration of the contract of resale between the appellant and the Georgia purchaser. The appellee sold no beans in Georgia and should not suffer the loss caused by the faulty Georgia test results.

I am authorized to state that Chief Justice Adkisson and Mr. Justice Purtle join in this dissent.