180 N.J. Super. 122 (1981)
433 A.2d 841
STANLEY JAKOWSKI AND JOAN JAKOWSKI, PLAINTIFFS,
v.
CAROLE CHEVROLET, INC., ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided May 5, 1981.
*124 Carole S. Powell for plaintiff Stanley Jakowski.
Raymond Connell for defendant Carole Chevrolet, Inc. (Dwyer, Connell & Lisbona, attorneys).
NEWMAN, J.S.C.
Plaintiff seeks summary judgment on count I of the complaint alleging breach of a new car sales contract by defendant Carole Chevrolet, Inc.
The essential facts are not in dispute. On March 8, 1980 plaintiff Jakowski (hereinafter "buyer") entered into a contract of sale with defendant Carole Chevrolet, Inc. (hereinafter "seller"), calling for the purchase of one new 1980 Chevrolet Camaro. The parties also agreed that the car would be undercoated and that its finish would have a polymer coating. While there is some disagreement as to exactly when the buyer ordered the coatings, it is undisputed that prior to delivery the seller agreed to deliver the car with the coatings applied. Likewise, it is undisputed that the car in question was delivered to the buyer without the required coatings on May 19, 1980.
The next day, May 20, 1980, the seller contacted the buyer and informed him that the car delivered to him lacked the coatings in question and seller instructed buyer to return the car so that the coatings could be applied. On May 22, 1980 the buyer returned the auto to the seller for application of the coatings. Sometime during the evening of May 22 or the morning of May 23 the car was stolen from the seller's premises and it was never recovered. Seller has refused to either provide a replacement auto to buyer or to refund the purchase price. Buyer remains accountable on the loan, provided through GMAC, for the purchase of the car.
*125 The narrow question thus presented is upon whom, as between buyer and seller, this loss should fall. In U.C.C. terminology, on May 22, 1980 which party bore the risk of the car's loss.
Seller argues that the risk of loss passed to the buyer upon his receipt of the auto. This is consistent with U.C.C. § 2-509(3) pursuant to which the risk of loss passes to the buyer upon his receipt of the goods. Section 2-509(4), however, expressly provides that the general rules of § 2-509 are subject to the more specific provisions of § 2-510 which deals with the effect of breach upon risk of loss.
Buyer relies upon § 2-510(1) which provides:
Where a tender or delivery of goods so fails to conform to the contract as to give a right of rejection the risk of their loss remains on the seller until cure or acceptance.
Application of this section to the instant facts requires that three questions be answered. First, did the car "so fail to conform" as to give this buyer a right to reject it? If so, did the buyer "accept" the car despite the nonconformity? Finally, did the seller cure the defect prior to the theft of the auto?
The first question must be answered in the affirmative. The contract[1] provided that the car would be delivered with undercoating and a polymer finish, and it is undisputed that it was delivered without these coatings. The goods were thus clearly nonconforming and, despite seller's assertion to the contrary, the degree of their nonconformity is irrelevant in assessing the buyer's concomitant right to reject them. N.J.S.A. 12A:2-106 is clear in its intent to preserve the rule of strict compliance, that is, the "perfect tender" rule:
Goods ... are "conforming" or conform to the contract when they are in accordance with the obligations under the contract. [N.J.S.A. 12A:2-106(2), emphasis supplied. See also, Comment 2 to § 2-106].
*126 The language of § 2-510(1), "so fails to conform," is misleading in this respect: no particular quantum of nonconformity is required where a single delivery is contemplated. The allusion is to § 2-612 which substitutes a rule of substantial compliance where, and only where, an installment deal is contemplated. White & Summers, Uniform Commercial Code (2 ed. 1980), § 5.5 at 187-188.
Secondly, did buyer "accept" the auto by taking possession of it? This question was presented in Zabriskie Chevrolet, Inc. v. Smith, 99 N.J. Super. 441 (Law Div. 1968). In Zabriskie it was held that the mere taking of possession by the purchaser is not equivalent to acceptance. Before he can be held to have accepted, a buyer must be afforded a "reasonable opportunity to inspect" the goods. N.J.S.A. 12A:2-606.
Seller's actions in this matter preclude analysis in conventional "acceptance" terms. Buyer had no opportunity, indeed no reason, to reject, given seller's own communication to buyer shortly after delivery, to the effect that the goods did not conform and that the seller was exercising its right to cure said nonconformity. See N.J.S.A. 12A:2-508 (seller's right to cure). This communication, in effect an acknowledgement of nonconformity, obviated the need for a formal rejection on buyer's part, if, indeed, § 2-510(1) imposes such an obligation. Put another way, it precluded the buyer from rejecting the car. Consistent with this analysis, I find as a matter of law that there was no acceptance by buyer of this nonconforming auto.
As to the final question of whether the seller effected a cure, there is no evidence  in fact defendant does not even contend  that cure was ever effected.
Given the undisputed facts, the operation of § 2-510(1) is inescapable. The goods failed to conform, the buyer never accepted them and the defect was never cured. Accordingly, the risk of loss remained on the seller and judgment is granted for plaintiff.
*127 A further note on the law is in order. It is possible to conjure up a host of hypotheticals leading to seemingly perverse results under § 2-510. The section has been the subject of some scholarly criticism. See e.g., White & Summers, supra, § 5.5 at 187. Williston, "The Law of Sales in the Proposed Uniform Commercial Code," 63 Harv.L.Rev. 561, 583 (1950).
The fact is, however, that those courts considering it have had little difficulty in applying it as written. See, e.g., United Airlines, Inc. v. Conductron Corp., 69 Ill. App.3d 847, 26 Ill.Dec. 344, 387 N.E.2d 1272 (Ill. App. 1979) (flight trainer destroyed in fire after delivery to buyer); Southland Mobile Home v. Chyrchel, 255 Ark. 366, 500 S.W.2d 778 (Sup.Ct. 1973) (mobile home destroyed in fire after delivery to buyer); Graybar Elec. Co. v. Shook, 283 N.C. 213, 195 S.E.2d 514 (Sup.Ct. 1973) (nonconforming cable stolen while in buyer's possession); Wilke v. Cummins Diesel Eng'g, Inc., 252 Md. 611, 250 A.2d 886 (Ct.App. 1969) (engine block frozen while in buyer's possession).
The rule is simple enough: under N.J.S.A. 12A:2-510(1), where goods fail to conform to the contract of sale the risk of loss remains on the seller until the buyer accepts the goods or until the seller cures the defect. Such was the result in the aforecited cases, even though in all of them the goods were still in the buyer's possession at the time of their destruction.
For present purposes it is adequate to hold simply that where a seller obtains possession of the goods in an effort to cure defects in them so as to comply with his end of the bargain, he is under a contractual duty to redeliver them to the buyer. In failing to do so, he has breached the contract.
Pursuant to N.J.S.A. 12A:2-711 buyer is entitled to a refund of so much of the purchase price as has been paid to seller. Included in the cost of the automobile are the finance charges incurred by the buyer, who secured financing from GMAC pursuant to a retail installment sales contract entered into with the seller. There is no dispute about including these charges in the purchase cost, and the buyer, as of March 30, 1981, indicated *128 the total amount due on any judgment to be $9,398.75. However, since this case was first heard some additional time has passed and a current pay-off figure should be obtained for inclusion in this judgment.
NOTES
[1] Seller makes much of the fact that the original sales order failed to specify the coatings in question. It is undisputed, however, that seller, subsequent to execution of the order, agreed to supply the coatings prior to delivery. As such, the coatings were clearly part of the "contract," as that term is defined by the Code. N.J.S.A. 12A:1-201(11).