TRI–CONTINENTAL LEASING
CORP., Appellant,

v.

LAW OFFICE OF RICHARD W.
BURNS, Appellee.

No. 01–85–00361–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 19, 1985.

Rehearing Denied May 8, 1986.

Stephen E. Price, Freedman & Hull, Houston, for appellant.

Scott, William H., Jr., Beeton, Timothy A., Houston, for appellee.

Before EVANS, C.J., and DUGGAN and LEVY, JJ.

## OPINION

EVANS, Chief Justice.

Tri-Continental Leasing Corporation appeals from a take-nothing judgment entered against it in a suit to recover rentals allegedly due under a written lease of a copying machine. We affirm the trial court's judgment.

The basic facts are undisputed. The appellee, Richard W. Burns, was approached by an office equipment vendor, Business Equipment of Houston, Inc. in March 1982. The vendor's salesman, Clint Enloe, represented to Burns that he had a copying machine worth $5,000 that he would sell for $4,200. Enloe told Burns that if he wanted to acquire the machine under a lease transaction, he could write off the cost for tax purposes. Enloe produced a printed lease form, bearing the heading "Tri-Continental Leasing Corporation, Vendor Service Division," which designated Tri-Continental as the lessor of the equipment. The blank spaces in the printed form were filled in by handwriting to show a 36–month lease term, rent payable in monthly installments of $189.40 each, and an advance payment of $568.47 for the first and last two months rent payments. The lease was dated March 30, 1982, and provided that it would not become effective until accepted by a duly authorized officer of Tri-Continental.

On April 5, 1982, before Tri-Continental's officer executed the lease, the vendor's salesman, Enloe, had the copying machine delivered to Burns' offices. At that time, Burns executed a "Delivery and Acceptance Receipt," acknowledging "full inspection" of the machine and that it was "in good condition." Tri-Continental executed the lease agreement on April 7, 1982.

Soon after delivery, the machine malfunctioned and could not be repaired. The machine continuously jammed and tore up the paper. It also leaked a fluid and emitted nauseous odors, making Burns' secretary ill on several occasions. Enloe visited Burns' office three or four times in an attempt to fix the machine. On April 21, 1983, Burns paid $312.70 to the vendor for work performed by Enloe in an effort to repair the machine. In spite of these efforts, the machine continued to malfunction, and Enloe finally told Burns that the machine could not be fixed. On May 3, 1982, before the due date of the next lease payment, Burns advised Enloe by letter that he was terminating the lease and asked that the machine be removed from his office. In June or July of 1982, Burns had conversations with Tri-Continental's office, and he again asked that the machine be picked up at his office. In September and October 1982, he wrote to Tri-Continental's attorneys making similar requests. Finally, in January or February of 1983, Tri-Continental did repossess the copier and sold it for approximately $500. Tri-Continental brought this action in November 1982, asserting that it had declared the balance of all lease payments due, so that Burns owed it a total sum of $6,770.05, plus interest and attorney's fees.

By answer and counterclaim, Burns asserted that Tri-Continental and Business Equipment of Houston, Inc. were, in effect, one and the same. He alleged that they had conspired to defraud him through false representations that the machine was in working condition and that Business Equipment, as Tri-Continental's exclusive dealer-

ship agent, would repair any defects. He alleged that both Tri-Continental and Business Equipment knew or should have known that the equipment would not perform as represented, that there was an entire failure of consideration, and that notwithstanding the lessor's written disclaimers of responsibility, which were unconscionable and against public policy, Tri-Continental and Business Equipment were bound by their implied warranty that the equipment was suitable for its intended use.

After a non-jury trial, the court found that Burns and Business Equipment, the "assignee" of Tri-Continental, executed the lease agreement on March 20, 1982, and that Tri-Continental ratified the agreement on April 7, 1982; that the copying machine was delivered to Burns by Business Equipment on April 5, 1982; that on the following day, April 6, 1982, the machine malfunctioned, and despite repeated attempts at repair by Business Equipment, the machine never performed as intended; that Burns notified Tri-Continental of his intent to rescind the lease as early as June 1982, but that neither Business Equipment nor Tri-Continental made any attempt to repossess it until January or February 1983. The court further found that the solicitation of the lease agreement by Tri-Continental or its "assignee," Business Equipment, constituted an offer to Burns, which Burns accepted; but that despite such offer and acceptance, there was no consideration due to the fact that the copier never performed its intended function, and as a result, Burns rescinded the contract. The court also found that Tri-Continental had not made a reasonable effort to mitigate damages, and that the terms of the lease agreement were onerous, overreaching, and against public policy.

On these findings, the trial court entered a take-nothing judgment with respect to Tri-Continental's action against Burns, and against Burns on his counter-claim against Tri-Continental. Only Tri-Continental appeals.

In its first 12 points of error, Tri-Continental challenges the sufficiency of the evidence supporting the trial court's findings. Because these are "no evidence" points, we consider only the evidence, and reasonable inferences to be drawn therefrom, that supports the trial court's judgment, and we reject all evidence and inferences to the contrary. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981).

■ There is legally sufficient evidence to support the trial court's findings that the copying machine never performed its intended function, that this constituted a complete failure of consideration, and that the contract was rescinded for that reason.

But Tri-Continental contends that these findings must be disregarded, as a matter of law, because of the express disclaimers contained in its written lease. Tri-Continental points to provisions in the lease that provide, in effect, that the lessor has made no representations or warranties "of any kind or nature, directly or indirectly, express or implied, after any manner whatsoever, including the suitability of such equipment, its durability, its fitness for any particular purpose, its merchantability, its condition, ... (and) that the equipment is leased 'as-is.'" The lease further provides that if the equipment does not operate "as represented or warranted by the vendor" or is "unsatisfactory for any reason," the lessee's only claim is against the vendor and that the lessee will nevertheless pay the lessor all the rents payable under the lease.

In a prior case, this Court has upheld written disclaimer provisions in an equipment lease that contained language similar to that in Tri-Continental's lease. *Southwest Park Out-patient Surgery, Ltd. v. Chandler Leasing Division*, 572 S.W.2d 53 (Tex.Civ.App.–Houston [1st Dist.] 1978, no writ). In that case, an appeal from a summary judgment in favor of the equipment lessor, we held that despite summary judgment evidence showing that the defective equipment did not meet its intended function, the lessee remained liable to the lessor for the stipulated rental payments.

There is a substantial distinction between the situation in *Chandler* and that presented here. In *Chandler*, we were not faced with a finding that the lease terms were unconscionable, but only with summary judgment proof showing the defective nature of the equipment. Here, the trial court not only found the equipment to be so defective that it failed to perform its intended function, but also, in effect, that the disclaimer provisions in the lease agreement were unconscionable. Although Tri-Continental generally challenges this finding by a point of error, it does not point out in its argument in what manner the evidence is insufficient to support this finding.

In deciding whether a contract is unconscionable, a court is entitled to look at "the entire atmosphere in which the agreement was made, the alternatives, if any, which were available to the parties at the time of the making of the contract; [and] the non-bargaining ability of one party." *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex.Civ.App.— Texarkana 1975, no writ).

Unconscionable conduct is statutorily defined as "an act or practice which, to a person's detriment: (A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or (B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration." Tex.Bus. & Com. Code Ann. sec. 17.45(5) (Vernon Supp.1986).

■ Here, it is undisputed that Burns was unfamiliar with the operation of the copying machine. Until he actually tried to use it in his office, he could not determine whether it was in good working condition. Obviously, Enloe, the vendor's salesman, was in a superior position to know whether the machine would perform its intended function. The trial court could reasonably have decided that Enloe, being in a superior position of knowledge, took advantage of Burns to a "grossly unfair degree" by representing that the machine would perform its intended function, and that Tri-Continental authorized or ratified the salesman's conduct. *See Chastain v. Koonce*,

28 Tex.Sup.Ct.J. 509 (June 19, 1985). Thus, there is some evidence to support the first test of section 17.45(5).

■ It is also undisputed that the machine malfunctioned soon after it was delivered to Burns, and that despite Enloe's attempts to have it repaired, it was never of any use to Burns. In the light of all the circumstances attending the transaction, the trial court could reasonably have decided that Burns was compelled to rely on the salesman's representations, and having done so to his detriment, he received no value for the consideration he paid in the transaction. This would support the trial court's ruling under the second test of section 17.45(5).

The next question is whether the salesman's representations may be attributed to Tri-Continental. Although the trial court's findings referred to Tri-Continental as the vendor's "assignee," the real issues are whether Tri-Continental impliedly authorized the vendor's salesman to act on its behalf, and whether it ratified the salesman's conduct.

■ We conclude that there is evidence to support a finding that Tri-Continental impliedly authorized the vendor's salesman to represent it in the transaction, and that it also ratified such conduct after the defective equipment was delivered. Although Tri-Continental's lease contained written disclaimers that expressly denied the existence of any agency relationship between it and the vendor or the vendor's salesmen, those disclaimers cannot be given conclusive effect in view of the trial court's findings that the lease terms were unconscionable. Similarly, the trial court's finding of unconscionability precludes conclusive effect being given to the stipulation that the parties' entire agreement is set forth in the lease, subject to modification only by a writing signed by Tri-Continental's executive officer. *See Weitzel v. Barnes*, 691 S.W.2d 598 (Tex. 1985). This distinguishes this case from *Stewart v. United States Leasing Corp.*, 702 S.W.2d 288 (Tex.App.—Houston [1st Dist.], 1985,

no writ), because in that case there was no finding of unconscionability.

■ We also conclude that the trial court's judgment should be sustained, notwithstanding Burns' execution of the Delivery and Acceptance Receipt at time of delivery, acknowledging "full inspection" of the machine and that it was "in good working condition." In a sale of goods, acceptance occurs when the buyer has had "a reasonable opportunity to inspect the goods." Tex.Bus. & Com.Code Ann. sec. 2.606 (a)(1) (Vernon 1968). This same principle is also applicable in this case involving the leasing of equipment. It is undisputed that Mr. Burns signed the receipt when the equipment was delivered and before he had any opportunity to test the working order of the machine. We overrule Tri-Continental's points of error one through twelve.

For the reasons stated above, we also overrule points of error 14 and 15, in which Tri-Continental contends generally that the evidence is legally insufficient to support the trial court's judgment.

We need not consider Tri-Continental's thirteenth point of error in which it contends that the trial court erred in excluding certain documentary exhibits. The excluded documents related to the issues of the amount of rentals due and owing under the terms of the lease and Tri-Continental's attempt to accelerate the unaccrued rental payments. Because we have concluded that the trial court properly entered the take-nothing judgment, we need not consider these issues or the related issue of whether Tri-Continental had the right to accelerate unearned rentals for the balance of the lease term. *See American Lease Plan v. Ben-Kro Corp*, 508 S.W.2d 937, 943 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) (in which this Court held that a lease contract with similar terms did not permit a recovery of unaccrued rental payments).

The judgment of the trial court is affirmed.

LEVY, Justice, dissenting.

Because the majority finds a controlling distinction in this case from *Southwest Park Outpatient Surgery, Ltd. v. Chandler Leasing Division*, 572 S.W.2d 53 (Tex. Civ.App.—Houston [1st Dist.] 1978, no writ), consisting of the trial court finding here that the lease disclaimer provisions were unconscionable, I respectfully dissent.

The majority asserts that the trial court could "reasonably" have decided:—

that Enloe, the vendor's salesman, knowingly misrepresented the condition of the copying machine to Burns (notwithstanding the lessor's express disclaimer in the lease of any warranty or representation of fitness whatever, the lease providing that the equipment is leased "as is");

that Enloe "took advantage of Burns (a practicing lawyer) to a 'grossly unfair degree'" (apparently suggesting that Enloe was gifted with clairvoyance by knowing in advance that the machine would not function as intended and notwithstanding Burns's written acknowledgement of receipt of the machine "in good working condition"); and

that Tri-Continental authorized or ratified Enloe's conduct (despite the lease's express disclaimer denying the existence of any agency relationship between Tri-Continental and the vendor or the vendor's salesman).

Further, the majority asserts—without supporting authority—that the lease's disclaimers, and the stipulation that the entire agreement of the parties is set forth in the lease, "cannot be given conclusive effect" because of the trial court's unconscionability finding.

This finding, I think, contradicts this Court's earlier decision in a similar equipment lease case, *Southwest Park, supra*, which upheld the enforceability of the lease. I fail to see any evidence or reason that the lease is "unconscionable," merely because the lessor was not responsible for, nor was the enforceability of the lease dependent upon, the performance of the machine. Burns agreed that if the machine

failed to operate properly, or if any warranty by Business Equipment, Inc., the vendor, was breached, all such claims would be against the vendor. To facilitate this, Tri-Continental agreed to assign to Burns all rights that it had, as the purchaser against the vendor, for breach of warranty or representation concerning the equipment. It was specifically provided by the lease that Business Equipment was not an agent of Tri-Continental, that any representations by Enloe were not binding on Tri-Continental, that the lease contained all the agreements between the parties, and that "failure of the equipment properly to operate" would not relieve Burns of his obligations under the lease. Tri-Continental did not guarantee the operation of the copying machine and, to the contrary, expressly disclaimed such a guarantee. Consideration for the lease was not the copier, but the lessor's purchase of the copier and the extension of credit to the lessee, all of which the lessor performed. The lease agreement was expressly made irrevocable, and Burns's responsibilities under the lease were binding and enforceable even if the equipment malfunctioned. Burns was without recourse against Tri-Continental, but not as against Business Equipment as vendor. This hardly makes the lease "unconscionable."

I would sustain Tri-Continental's first twelve, and the fourteenth and fifteenth, points of error on the grounds that both the findings of the trial court and its judgment are not supported by legally sufficient evidence. *See Fettig v. Fettig,* 619 S.W.2d 262, 269 (Tex.Civ.App.—Tyler 1981, no writ); *Trevino v. Munoz,* 583 S.W.2d 840, 843 (Tex.Civ.App.—San Antonio 1979, no writ). It appears to me, however, that *American Lease Plan v. Ben-Kro Corp.,* 508 S.W.2d 937 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.), effectively precludes Tri-Continental's claimed right to accelerate unearned rentals for the balance of the equipment lease term.

I would reverse the judgment of the trial court and remand the cause for a new trial.

## On Motion for Rehearing

In its motion for rehearing, supported by able amicus curiae arguments, Tri-Continental contends that the majority opinion confuses the "doctrine of unconscionable contract," as stated in the Uniform Commercial Code, with "unconscionable action or course of action" under the Deceptive Trade Practices Act. Arguing that the question of whether a contract is unconscionable must be determined as a matter of law, Tri-Continental contends that the trial court's finding that the disclaimer provisions in its lease were "onerous, overreaching and against public policy," constituted a legal conclusion, not a fact finding.

■ The decision as to whether a contract clause is unconscionable, so that its enforcement should be denied or limited, is a matter of law for the court's determination. But in making that determination, the court must look to the "entire atmosphere" in which the agreement was made, *Wade v. Austin,* 524 S.W.2d 79, 86 (Tex. Civ.App.—Texarkana 1975, no writ). Thus, evidence is admissible to show the commercial setting at the time of the making of the contract. *Compare* Tex.Bus. & Com.Code Ann. sec. 2.302(b) (Vernon 1968). In deciding the fairness of a contract's substantive terms, the court must also consider whether there were "procedural abuses," such as an unfair bargaining position between the parties at the time the agreement was made. *Wade v. Austin,* 525 S.W.2d at 86; *Transamerican Leasing Co. v. Three Bears, Inc.,* 586 S.W.2d 472 (Tex.1979).

■ Here, there was evidence from which the trial court could factually have found that the sales agent took "grossly unfair" advantage of Burns' lack of knowledge to a "grossly unfair degree" and that there was a "glaring and flagrant" difference between the consideration paid by Burns for the copier and the value he actually received. *See Chastain v. Koonce,* 700 S.W.2d 579, 582–83 (Tex.1985). There was also evidence from which the court could have found that Tri-Continental authorized and ratified the sales agent's conduct in dealing with Burns. Thus, the trial

court had sufficient evidentiary basis for a factual determination of unconscionable action or course of action under Tex.Bus. & Com.Code Ann. sec. 17.45(5) (Vernon Supp. 1986). *Chastain v. Koonce,* 700 S.W.2d 579. On the basis of these factual determinations, the trial court could properly have concluded, as a matter of law, that the disclaimer clauses were unconscionable under the circumstances present when the contract was made. Tex.Bus. & Com.Code Ann. sec. 2.302 comment 1 (Vernon 1968) and authorities cited therein. Having decided that the contractual disclaimer clauses were unconscionable, the trial court acted within its discretion in denying their enforcement in the instant case. Sec. 2.302 comment 2.

Our holding in this case does not constitute a general condemnation of the contract clauses in question, and in this respect we adhere to our previous holding in *Southwest Park Outpatient Surgery, Ltd. v. Chandler Leasing Division,* 572 S.W.2d 53 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ).

The motion for rehearing is overruled.

DUGGAN, J., also participating.

LEVY, J., dissents.