Mike **MOSES**, Plaintiff-Appellee,

v.

Gary **NEWMAN**, individually and d/b/a Lakeview Mobile Homes, Defendant-Appellant.

Court of Appeals of Tennessee, Eastern Section.

June 8, 1983.

Permission to Appeal Denied by Supreme Court Oct. 11, 1983.

John W. Cleveland of Howe & Cleveland, Sweetwater, for defendant-appellant.

J. Michael Billingsley of Carter & Reid, Athens, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

Plaintiff purchased a mobile home from defendant seller, which was delivered to plaintiff's lot. The mobile home was destroyed by a windstorm and the chancellor held the risk of loss had remained with the seller and entered judgment for plaintiff. Defendant has appealed.

Plaintiff, in response to defendant's advertisement of "trailer, complete set-up", along with his uncle, made several trips to Lakeview Mobile Homes and agreed on February 7, 1981, to purchase the used mobile home.

On February 9, 1981, defendant delivered the mobile home to plaintiff's rented lot, blocked up, leveled the mobile home, removed the tires and axles and connected the sewer and water pipes. On the same date, plaintiff's fiancee cleaned the interior of the mobile home and moved some kitchen utensils and dishes into the mobile home. She made an inspection of the home and discovered a broken window and water pipe. Plaintiff called these conditions as well as having no door keys to defendant's attention. On the afternoon of February 10th, a windstorm totally destroyed the mobile home.

The evidence on the issue of whether plaintiff had accepted the mobile home is sharply disputed. The chancellor concluded plaintiff had not accepted the mobile home

at the time of the loss. Defendant insists the evidence preponderates against the chancellor's determination.

Plaintiff and his uncle testified defendant's salesman represented to them that a "set-up" of the mobile home included placing the trailer on blocks, leveling, connecting water and sewer pipes and anchoring the mobile home. Defendant's salesman denied representing to plaintiff that a complete set-up included anchoring the trailer and, while defendant would anchor trailers, an additional charge of $150.00 was made for this service.

The chancellor accredited the testimony of plaintiff and his uncle on this issue. Defendant's witness conceded in some instances the cost of anchorage was included in the purchase price and responded thusly to the chancellor's question:

THE COURT: Now, what was your conversation, one more time, pertaining to this tie-down? I'm still not clear on this.

A. If you come in to buy a home—

THE COURT: I mean, what—with the people who we're dealing with.

A. The same thing.

THE COURT: Well, what was this?

A. Our policy on set-up?

THE COURT: I mean, what did you tell them? What was your conversation? That's what I'm asking you.

A. They asked me what the policy on set-up was.

THE COURT: Yes, sir.

A. We block, level, hook the sewer up to twenty feet away from the home, and sometimes stretch that twenty feet. Anchoring—we do that.

THE COURT: Is that what you told them?

A. Yes, sir.

THE COURT: Did you tell them, at that time, that anchoring was not important?

A. I don't remember.

■ Defendant further conceded the installation crew was to return the following day. The evidence does not preponderate against the chancellor's determination that the seller had not completed the contracted installation at the time of loss.

The issue thus becomes whether the buyer "accepted" the goods within the meaning of the Code. Acceptance is defined in T.C.A., § 47–2–606, which provides in pertinent part:

§ 47–2–606. *What constitutes acceptance of goods.*—(1) Acceptance of goods occurs when the buyer:

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b) fails to make an effective rejection (subsection (1) of § 47–2–602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

■ Under subsections (a) and (b) the purchaser is afforded a "reasonable opportunity to inspect." In the instant case, plaintiff did not explicitly accept under (a) but defendant argues that plaintiff's failure to reject constituted an acceptance under (b). What is a reasonable opportunity varies, depending upon the type of goods involved. Plaintiff's opportunity to inspect the mobile home on the seller's sales lot and during the installation did not constitute a reasonable opportunity for inspection within the meaning of the Code.

■ Under T.C.A., § 47–2–606(c), arguably the placing of personal property in the mobile home was an act inconsistent with the seller's ownership; however, any use of the goods by the purchaser is inconsistent with the seller's ownership but the statute, by affording the purchaser a reasonable opportunity to inspect, implies possession or some possible use by the purchaser without acceptance of the goods. White and Summers, *Handbook of the Law Under the Uniform Commercial Code,* (2 ed., 1980), § 5.5 at 187–8. *Accord: Jakowski v. Carole Chevrolet, Inc.,* 180 N.J.Super. 122, 433 A.2d 841 (1981).

In the instant case, the purchaser had not occupied the mobile home and the limited use by placing certain articles of personalty in the kitchen and cleaning did not constitute an acceptance under the act.

The risk of loss provisions of the Uniform Commercial Code are contained in T.C.A., §§ 47–2–509, 47–2–510. In the instant case defendant argues T.C.A., § 47–2–509(3) applies and passes the risk of loss to the buyer on receipt of the goods where the seller is a merchant. Plaintiff argues T.C.A., § 47–2–510(1) applies, which provides: "Where a tender or delivery of goods so fails to conform to the contract as to give a right of rejection the risk of their loss remains on the seller until cure or acceptance."

Under the chancellor's factual determination the delivery of the trailer failed to conform to the contract giving rise to a right of rejection. The right of rejection under T.C.A., § 47–2–601 arises if the goods "fail in any respect to conform to the contract." *See* White and Summers, *supra.* Whether the mobile home conformed to the contract is tested by the definition in T.C.A., § 47–2–106(2): "Goods or conduct including any part of a performance are 'conforming' or conform to the contract when they are in accordance with the obligations under the contract." In this case, plaintiff contracted for a habitable mobile home plus the installation. Accordingly, since the loss occurred before the installation was complete, the defendant had not delivered conforming goods which would shift the risk of loss to plaintiff.

For the risk to shift to the purchaser, the purchaser must receive the goods and the seller must fulfill his contractual obligations. "Under subsection (1) the seller by his individual action cannot shift the risk of loss to the buyer unless his action conforms with all the conditions resting on him under the contract." Comment 1 to T.C.A., § 47–2–510. *See William F. Wilke, Inc. v.*

*Cummins Diesel Engines, Inc.,* 252 Md. 611, 250 A.2d 886 (1969), where the court held, notwithstanding the fact that the goods were delivered to the buyer, the risk of loss remained with the seller where the seller had not conducted testing or the inspection specified by the contract of sale.

An Arkansas case similar to the instant case is *Southland Mobile Home Corp. v. Chyrchel,* 255 Ark. 366, 500 S.W.2d 778 (1973). In that case, a mobile home had been delivered to the buyer and was damaged by fire before the installation of the home was completed. The sales price included installation of all facilities to make the mobile home ready for use. The court held the risk of loss remained with the seller until the installation was complete.[1]

On the basis of the foregoing, we affirm the judgment of the chancellor and remand the cause at appellant's cost.

PARROTT, P.J., and GODDARD, J., concur.

---

1. Appellant notes that in *Southland* there was evidence that the buyer had signed written acceptances on other trailers but had not signed an acceptance for the trailer in question. This distinction is not crucial for several reasons: first, it goes to the issue of acceptance, not the issue of what is a nonconformity; second, the defendant in the current case testified that he does not use written acceptances in his business; finally, the Code does not require a formal, *i.e.,* written, acceptance or rejection.