IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2001 Session

## RICKY RIDDLE, ET AL. v. HEARTLAND NURSERY COMPANY

**Appeal from the Circuit Court for Franklin County**
**No. 11,175-CV      Buddy D. Perry, Judge**

---

**No. M2000-02190-COA-R3-CV - Filed November 2, 2001**

---

In this action to collect the purchase price for the sale of nursery stock, the buyer alleged that the goods did not conform to the contract and that the number of units delivered was significantly short of the number specified in the invoice. The buyer also filed a counterclaim for the damage to its professional reputation resulting from the seller's breach. The Circuit Court of Franklin County resolved all the issues in favor of the seller and rendered judgment for the balance of the purchase price. Because we find that the buyer had accepted the goods and failed to carry his burden of proving that they were defective, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and DON R. ASH SP.J., joined.

Mark Stewart, Winchester, Tennessee, for the appellant, Heartland Nursery Company.

Gregory M. O'Neal, Winchester, Tennessee, for the appellee, Ricky Riddle, d/b/a R & R Nursery & Landscaping.

## OPINION

### I.

Ricky Riddle runs a nursery business in Winchester under the name of R & R Nursery and Landscaping. In October of 1997, Mr. E. B. Gee of Heartland Nursery in New Madrid, Missouri, visited Mr. Riddle's nursery and inspected his growing stand of white, pink, and red dogwood trees. The trees varied in height from twelve to thirty-six inches. Mr. Gee liked what he saw and told Mr. Riddle that he would take all of the dogwoods Mr. Riddle had available. Mr. Gee made a deposit of $5,000, but the parties disagree about the terms for payment of the balance. At this advanced stage of the litigation, we find that the payment terms are immaterial.

In January of 1998, Mr. Gee told Mr. Riddle to dig the plants and have them ready for transport. Mr. Riddle proceeded to dig, sort, cull and bundle the plants, and approximately two weeks later Mr. Gee sent a truck to pick up the goods. He arrived early in the morning and took one load to a destination in Alabama, and then returned that afternoon for the balance of the shipment. Mr. Gee himself helped load and count the plants, which had been sorted and bundled according to color and size. He signed the invoice showing the number and type of plants received. The sales price amounted to $40,183.75, leaving a balance of $35,183.75 after crediting Mr. Gee's $5,000 down payment. Mr. Riddle testified that Mr. Gee said he had left his checkbook at home, but that he would send a check when he got back to Missouri. Mr. Gee says that the custom in the trade is to wait until the buyer knows how many plants will grow in the spring. Nevertheless, three or four months later, Mr. Gee finally returned one of Mr. Riddle's telephone calls and said that some of the plants had died and that there was a shortage in the count. In June, Mr. Gee sent Mr. Riddle a check for $14,628.00, claiming that that amount represented the balance due after deducting the price of the missing trees and the ones that died. In September, Mr. Riddle filed this action to collect the balance.

## II.

The key factual question in this case is whether Mr. Gee accepted the goods. Under Article 2 of the *Uniform Commercial Code* "acceptance" of goods by the buyer is a term of art. Because of the legal consequences that result from a buyer's acceptance of goods identified to the contract, the code is careful to define when acceptance occurs. Tenn. Code Ann. § 47-2-606(1) says that a buyer has accepted the goods if he has done any of the following:

(a)      after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b)      fails to make an effective rejection (§ 47-2-602(1)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c)      does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

Mr. Gee could make an argument that he did not accept the goods on February 2, 1998 because he did not have a reasonable opportunity to inspect them. We recognize that possession has little to do with acceptance and that a buyer may have possession of the goods for a substantial period of time before he has accepted them. *See* J. White and R. Summers, *Uniform Commercial Code*, § 8-2 (4th ed. 1995); *Moses v. Newman*, 658 S.W.2d 119 (Tenn. Ct. App. 1983). But in this case, despite any reservations he may have had, Mr. Gee took possession of the goods and immediately resold them. According to his testimony, he sold the load in Alabama on the day he took possession; he delivered another lot to a nursery in McMinnville on the next day, and resold

the rest within a few days after returning to Missouri. His buyers replanted the trees and waited for them to grow in the spring.

We think all of that amounts to acts that are inconsistent with Mr. Riddle's ownership. Therefore, Mr. Gee accepted the goods under Tenn. Code Ann. § 47-2-606(1)(c). While White and Summers find 2-606(1)(c) troubling, and recommend that it be applied only when the buyer is aware of the nonconformity and takes action that is inconsistent with the seller's rights (such as reselling the goods after learning they are defective), *see* J. White and R. Summers, *Uniform Commercial Code*, § 8-2 (4th ed. 1995), we think that under the circumstances of this case the act of reselling the goods amounted to acceptance. *See Commonwealth Propane Co. v. Petrosol International, Inc.*, 818 F.2d 522 (6th Cir. 1987). It may be that Mr. Gee's haste in reselling the goods prevented him from discovering that some of the trees were too short or too tall or that some were crooked. It is true that neither he nor his buyers would know which trees would grow in the spring, but by shipping them to various states Mr. Gee created such practical difficulties for Mr. Riddle that Mr. Gee should be held to have accepted the goods. We acknowledge that there are similar cases that have come to the opposite conclusion, *see Jacob Hartz Seed Co. v. Coleman*, 612 S.W.2d 91 (Ark. 1981), but in that case the original seller was able to recover the seeds and test them. In this case there is no way Mr. Riddle could identify the trees he sold in order to contest the claim that they were defective.

### III.

One of the consequences of accepting goods is the obligation to pay for them. Tenn. Code Ann. § 47-2-607 (1). But all is not necessarily lost for the buyer. Where the buyer has accepted defective goods, he may recover as damages the loss resulting from the seller's breach "as determined in any manner which is reasonable." Tenn. Code Ann. § 47-2-714(1). The buyer's damages may include incidental and consequential damages. Tenn. Code Ann. § 47-2-714(3).

However, when a buyer accepts goods, he also assumes the burden of proof to establish any breach with respect to the goods accepted. Tenn. Code Ann. § 47-2-607(4). In a case like this, that burden is a heavy one for the buyer to carry, because no one knows for sure how many plants Mr. Gee delivered to his buyers nor what caused the plants to die. The buyer with the highest number of dead trees testified that the way the plants were handled after they left their origin probably caused them to die. Mr. Gee testified that his workers took the plants back to Missouri, stored them for a few days, and then boxed them before shipping them by common carrier to his buyer. There was no proof from Mr. Gee's other two buyers. He testified that he gave them certain credits, but even he does not know what the truth is with respect to the actual count or the condition of the plants.

Mr. Gee has failed to carry his burden of showing any breach with respect to the goods accepted. The invoice he signed when he took delivery establishes the number and the price of each type of plant he received. The seller is therefore entitled to be paid for the goods identified in the invoice.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Franklin County for any further proceedings necessary. Tax the costs on appeal to the appellant, Heartland Nursery Company.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.